✓ FILED ____ ENTERED
____ LOGGED _____ RECEIVED

1:06 pm, Nov 21 2022

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ Deputy

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

IN THE MATTER OF:

1) **CRIMINAL COMPLAINT AND ARREST WARRANT FOR EUGENE EDWARD GOLDEN**

2) **THE SEARCH OF:**

   **a)** ██████████████████████
   ████████████████████████
   █████████████████

   **b)** ████████████████████
   ███████████

   **c)** ███████████████████
   ████████████

   **d)** ██████████████████

   **e)** ████████████████████

   **f)** ████████████████████

*FILED UNDER SEAL*

22-3307 BPG

CASE NO. _____

████████████
████████████
████████████

Misc. No. ____ 2███████

---

### AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Rachal M. Torg, a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI), being duly sworn, depose and state as follows:

1.       I have been employed as an HSI Special Agent since November 2017. As part of the daily duties as an HSI Special Agent, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt, and possession of child pornography, in violation of Title 18 U.S.C. §§ 2251,

2252 and 2252A. I have gained experience through training in seminars, classes, and daily work related to conducting these types of investigations. Specifically, I have received formal training through HSI and other agencies in the area of child pornography, pedophile behavior, collectors of other obscene material, and internet crime. I have participated in the execution of numerous search warrants, of which the majority has involved child exploitation and/or child pornography offenses. Many of the child exploitation and/or child pornography search warrants resulted in the seizure of computers, cell phones, magnetic storage media for computers, other electronic media, and other items evidencing violations of federal laws, including various sections of Title 18, United States Code § 2252A involving child exploitation offenses. In the course of my employment with HSI, I have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media and within online accounts.

2. As a federal agent, I am authorized to investigate violations of laws of the United States and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

3. This Court has jurisdiction to issue the requested search warrants because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PURPOSE OF THIS AFFIDAVIT

4. I make this affidavit in support of application for:

a. A criminal complaint and arrest warrant charging **EUGENE EDWARD GOLDEN** with 18 U.S.C. § 2251 (Sexual Exploitation of Children) and 18 U.S.C. § 2252A(a)(5)(B) (Possession of Child Pornography).

b.   A search warrant under Rule 41 of the Federal Rules of Criminal Procedure and

18 U.S.C. 2703(a) 2703 (b)(1)(A) and 2703(c)(1)(A) to search:

i.)



5.      The **SUBJECT PREMISES** and Eugene **GOLDEN** described above in sections

i. and ii. are collectively referred to as the "**TARGET LOCATIONS**" in this affidavit.  The

accounts described above in sections iii., iv., and v. are collectively referred to as the "**TARGET**

**ACCOUNTS**" in this affidavit.

6.      The securing search warrant portion of this application is to search the **TARGET**

**LOCATIONS** and the **TARGET ACCOUNTS** and seize evidence of violations of 18 U.S.C.

§2251 (Sexual Exploitation of Children); 18 U.S.C. § 2252A(a)(2) (Receipt and Distribution of

Child Pornography); 18 U.S.C. § 2252A(a)(5)(B) (Possession of Child Pornography); and18

U.S.C. § 2252A(a)(6)  (Distribution of Sexually Explicit Materials to a Minor) (the "**TARGET OFFENSES**").

7.     The statements in this Affidavit are based in part on information provided by other law enforcement officers and on my investigation of this matter.  Since this Affidavit is being submitted for the limited purpose of securing a complaint and arrest warrant, as well as a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause for the charged offenses and to believe that contraband and evidence, fruits, and instrumentalities of violations of the **TARGET OFFENSES** are located within the **TARGET LOCATIONS** and **TARGET ACCOUNTS**.

## SUMMARY CONCERNING CHILD PORNOGRAPHY, PERSONS WHO POSSESS AND COLLECT, AND/OR PRODUCE CHILD PORNOGRAPHY, AND HOW USE OF COMPUTERS AND THE INTERNET RELATES TO THE POSSESSION, RECEIPT, DISTRIBUTION, AND PRODUCTION OF CHILD PORNOGRAPHY

8.     Based upon my training and experience in child sexual exploitation and child pornography investigations, and having worked with other experienced law enforcement officers in child exploitation investigations, I know the following:

a.     Persons who have a sexual interest in children or are involved with child pornography generally also have other sexually explicit materials related to their interest in children, which may consist of photographs, motion pictures, videos, text material, computer graphics and digital or other images of children.  Such persons may also have images of children or text writing that do not rise to the level of child pornography but nonetheless fuel their deviant sexual fantasies involving minors.  Such persons have been known to take and maintain photographs and video recordings of fully clothed children, not just in sexually provocative poses, but in public places and elsewhere.  I am aware that this sort of material has been admitted in trials under Fed.R.Evid. 404(b) to prove such things as the possessor's knowledge, intent, motive, and identity, and under Fed.R.Evid. 414 to prove the person has a sexual interest in minors.

b.     Individuals who have a sexual interest in children or images of children as described above and child pornography often maintain these images on cameras, film, video cameras, videos, computers, and other photographic equipment.  Such individuals have been known to connect their cameras, video cameras, and other photographic equipment to their computers in an effort to create added storage space for their images of children.

4

c. Individuals who have a sexual interest in children or collect child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica.  They do this to gain status, trust, acceptance, and support and to increase their collection of illicit images and child erotica.  The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, P2P, chat and file sharing programs, e-mail, e-mail groups, bulletin boards, Internet Relay Chat ("IRC"), newsgroups, Internet clubs, and various forms of Instant Messaging such as Yahoo! Messaging, and "chat" that is sometimes saved on the users' computer or other digital storage media.

d. Besides photos of minors and child erotica, such individuals often produce and/or collect other written material on the subject of sexual activities with minors, which range from fantasy stories to medical, sociological, and psychological writings, which they save to understand and justify their illicit behavior and desires.

e. Individuals who have a sexual interest in children or collect child pornography often collect, read, copy or maintain names, addresses, including e-mail addresses, phone numbers, and lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests, or have child pornography and child erotica for sale or trade.  These contacts are maintained for personal referral, exchange or, sometimes, commercial profit.  They may maintain these names on computer storage devices, web sites or other Internet addresses, and their discovery can serve as leads to assist law enforcement in proving the instant case and in apprehending others involved in the underground trafficking of child pornography.

f. Individuals who have a sexual interest in children or collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect from discovery, theft, and damage their collections of illicit materials.  The known desire of such individuals to retain child pornography together with the sense of security afforded by using computers, provides probable cause to believe that computer images, especially child pornography and erotic nudity involving minors, will be retained by the collector indefinitely.  These individuals may protect their illicit materials by passwords, encryption, and other security measures.  These individuals may also protect their illicit materials by saving it on movable media such as memory cards, memory sticks, CDs, DVDs, flash memory, thumb drives, and removable hard drives, which can be very small in size, including as small as a postage stamp, and easily secreted, or sent to third party image storage sites via the Internet.

9. Based on my investigative experience related to computer and internet related child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned the following:

a. Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, and utilized.  It has also revolutionized the way in which child pornography collectors interact with each other.  Child pornography formerly was

produced using cameras and film (either still photography or movies.)  The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images.  As a result, there were definable costs involved with the production of pornographic images.  To distribute these on any scale also required significant resources.  The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public.  The distribution of these wares was accomplished through a combination of personal contact, mailings, and telephone calls.  Any reimbursement would follow these same paths.

b.     The development of computers, smartphones and the internet have added to the methods used by child pornography collectors to interact with and sexually exploit children.  Computers, smartphones and the internet serve four functions in connection with child pornography.  These are production, communication, distribution, and storage.

c.     Mobile devices such as laptop computers, smartphones, iPods, iPads, and digital media storage devices are known to be used and stored in vehicles, on persons or other areas outside of the residence.

d.     Smartphones have the capability to access the Internet and store information, such as videos and images.  As a result, an individual using a smartphone can send, receive, and store files, including child pornography, without accessing a personal computer or laptop.  An individual using a smartphone can also easily plug the device into a computer, via a USB cable, and transfer data files from one digital device to another.  Many people generally carry their smartphone on their person.

e.     Gaming systems, such as PlayStation and XBOX platforms have similar attributes as computer devices.  Gaming systems can contain hard drives and store data as well as access the Internet using web browsers.  Gaming system also have the ability to communicate through messaging and chats, similar to computers.

f.     Child pornographers can now transfer photographs from a camera onto a computer-readable format.  With the advent of digital cameras, the images can now be transferred directly onto a computer.  A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection.  Electronic contact can be made to literally millions of computers around the world.  The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution and receipt of child pornography.

g.     Child pornography can be transferred via electronic mail or through file transfer protocols (FTP) to anyone with access to a computer and modem.   Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e., "Instant Messaging"), easy access to the Internet, and online file sharing and storage, the computer is a preferred method of distribution and receipt of child pornographic materials.

h.     The Internet and its World Wide Web afford collectors of child pornography several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.  Collectors and distributors of child pornography use online resources to retrieve and store child pornography, including services offered by Internet Portals

such as AOL Inc., Yahoo, and Google, Inc., Facebook, Dropbox, Instagram, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services, file exchange services, messaging services, as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Email accounts, online storage accounts, and other online communication accounts allow users to save significant amounts of data, including email, images, videos, and other files. The data is maintained on the servers of the providers and is occasionally retained by the providers after the user deletes the data from their account.

i. In my recent investigative experience, as well as recent discussions with law enforcement officers, I know that individuals who collect child pornography are using email accounts, online storage accounts, and other online communications accounts to obtain, store, maintain, and trade child pornography with growing frequency, in addition to, or as an alternative to, the use of personal devices.

j. Based on traits shared by collectors, the use of email, online storage accounts, and other online communication accounts, and the increased storage capacity of computers and server space over time, there exists a fair probability that evidence regarding the distribution, receipt and possession of child pornography will be found in the **TARGET LOCATIONS** and **TARGET ACCOUNTS,** notwithstanding the passage of time.

k. In addition, computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little to no cost. Even when such files have been deleted, they may be recoverable months or years later using readily available forensic tools.

l. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space for long periods of time before they are overwritten.

m. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages.

n. The storage capacity of personal computers has increased dramatically over the last few years. Common and commercially available hard drives are now capable of storing over 500 GB of data. With that amount of storage space, an individual could store thousands of video files and/or hundreds of thousands of image files.

o. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits. Since the storage capacity of hard drives has

increased dramatically over the last several years, it is more likely that the above-described information will be recovered during forensic analysis.

## **APPLE ACCOUNT**

10.     Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  The services include email, instant messaging, and file storage.

11.     iMessage and FaceTime allow users of Apple devices to communicate in real-time.  iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.

12.     iCloud is a file hosting, storage, and sharing service provided by Apple.  iCloud can be utilized through numerous iCloud-connected services and can also be used to store iOS device backups and data associated with third-party apps.  iCloud-connected services allow users to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.  For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on icloud.com.  iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers.  iCloud Drive can be used to store presentations, spreadsheets, and other documents.  iCloud Tabs enables iCloud to be used to synchronize webpages opened in the Safari web browsers on all of the user's Apple devices. iWorks Apps, a suite of productivity apps (Pages, Numbers, and Keynote), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations.  iCloud Keychain enables a user to keep website username and

passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

13.     Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space.  That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWorks and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, and other data.  Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for Kik, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud.

## GOOGLE ACCOUNT

14.     Google provides numerous free services to the users with a Google profile. Some of services include, Gmail, Google Hangouts, Google Wallet, Google+, Google Drive, Picasa Web Albums, and YouTube.  Gmail is a web-based email service that can also be accessed via mobile apps.  In 2017, Gmail comes with 15GB of free storage and users can receive emails up to 50 megabytes in size, including attachments, while they can send emails up to 25 megabytes. In order to send larger files, users can insert files from Google Drive into the message.  Emails remain in an active Gmail account until deleted by the user.  Google Hangouts is a communication platform which includes instant messaging, video chat, and SMS and Voice Over IP (VOIP) features service that provides both text and voice communication.  Google Hangouts

allows conversations between two or more users. Chat histories are saved online, allowing them to be synced between devices. Google Wallet is a mobile payment system that allows its users to store debit cards, credit cards, loyalty cards and gift cards, among other things, on their mobile phones. Google+ is a social networking service. Google Drive is a file storage and synchronization service, which provides users with cloud storage, file sharing, and collaborative editing. Picasa Web Albums is an image hosting and sharing web service that allows users with a Google account to store and share images for free. YouTube is a free video sharing website that allows users upload, view and share videos.

## CHARACTERISTICS COMMON TO INDIVIDUALS WHO POSSESS AND/OR ATTEMPT TO VIEW CHILD PORNOGRAPHY

15. Based on my previous investigative experience related to child exploitation investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who possess and/or attempt to view child pornography:

a. Such individuals often receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, in other visual media, or from literature describing such activity.

b. Such individuals may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides, and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. Such individuals may possess and maintain hard copies of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children often retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d. Likewise, such individuals often maintain their child pornography images in a digital or electronic format in a safe, secure, and private environment, such as a computer and surrounding area. These child pornography images are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, to enable the individual to view the child pornography images, which are valued highly. Some of these individuals also have been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis.

e. Importantly, evidence of such activity, including deleted child pornography, often can be located on these individuals' computers and digital devices through the use of forensic tools. Indeed, the very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted" it.[1]

f. Such individuals also may correspond with and/or meet others to share information and materials, rarely completely destroy correspondence from other child pornography distributors/possessors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, telephone numbers, and usernames of individuals with whom they have been in contact and who share the same interests in child pornography.

g. Such individuals prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world. Thus, even if a person uses a portable device (such as a mobile phone) to access the Internet and child pornography, it is more likely than not that evidence of this access will be found in such a location as the **TARGET LOCATIONS**.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

16. Based upon my training and experience, and information relayed to me by agents and others involved in the forensic examination of computers, I know that computer data can be stored on a variety of systems and storage devices, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards,

---

[1] *See United States v. Carroll*, 750 F.3d 700, 706 (7th Cir. 2014) (concluding that 5-year delay was not too long because "staleness inquiry must be grounded in an understanding of both the behavior of child pornography collectors and of modern technology"); *see also United States v. Seiver*, 692 F.3d 774, 778 (7th Cir. 2012) (Posner, J.) (collecting cases, *e.g.*, *United States v. Allen*, 625 F.3d 830, 843 (5th Cir. 2010); *United States v. Richardson*, 607 F.3d 357, 370-71 (4th Cir. 2010); and *United States v. Lewis*, 605 F.3d 395, 402 (6th Cir. 2010), for the principle that the "same time limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography").

cellular phones capable of storage, floppy disks, compact disks, magnetic tapes, memory cards, memory chips, and online or offsite storage servers maintained by corporations, including but not limited to "cloud" storage. I also know that during the search of a premises it is not always possible to search computer equipment and storage devices for data for a number of reasons, including the following:

a. Searching computer systems is a highly technical process which requires specific expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software application, or operating system that is being searched;

b. Searching computer systems requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted, or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted;

c. The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises; and

d. Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, computer users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography a computer user can conceal text in an image file which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is contraband, evidence, fruits, or instrumentalities of a crime.

17. Based on my own experience and my consultation with other agents who have been involved in computer searches, searching computerized information for contraband,

evidence, fruits, or instrumentalities of a crime often requires the seizure of all of a computer

system's input and output peripheral devices, related software, documentation, and data security

devices (including passwords), so that a qualified computer expert can accurately retrieve the

system's data in a laboratory or other controlled environment. There are several reasons that

compel this conclusion:

   a. The peripheral devices that allow users to enter or retrieve data from the storage devices vary widely in their compatibility with other hardware and software. Many system storage devices require particular input/output devices in order to read the data on the system. It is important that the analyst be able to properly re-configure the system as it now operates in order to accurately retrieve the evidence listed above. In addition, the analyst needs the relevant system software (operating systems, interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media), as well as all related instruction manuals or other documentation and data security devices; and

   b. In order to fully retrieve data from a computer system, the analyst also needs all magnetic storage devices, as well as the central processing unit (CPU). Further, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software that may have been used to create the data (whether stored on hard drives or on external media) for proper data retrieval.

   18. Additionally, based upon my training and experience and information related to

me by agents and others involved in the forensic examination of computers, I know that routers,

modems, and network equipment used to connect computers to the Internet often provide

valuable evidence of, and are instrumentalities of, a crime. This is equally true of so-called

"wireless routers," which create localized networks that allow individuals to connect to the

Internet wirelessly. Though wireless networks may be "secured" (in that they require an

individual to enter an alphanumeric key or password before gaining access to the network) or

"unsecured" (in that an individual may access the wireless network without a key or password),

wireless routers for both secured and unsecured wireless networks may yield significant evidence

of, or serve as instrumentalities of, a crime—including, for example, serving as the instrument

through which the perpetrator of the Internet-based crime connected to the Internet and,

potentially, containing logging information regarding the time and date of a perpetrator's network activity as well as identifying information for the specific device(s) the perpetrator used to access the network. Moreover, I know that individuals who have set up either a secured or unsecured wireless network in their residence are often among the primary users of that wireless network.

**PROBABLE CAUSE**

19.    Your Affiant is working a child exploitation investigation jointly with the Maryland State Police ("MSP"), Howard County Police Department ("HCPD"), and Baltimore Police Department ("BPD"). The ongoing investigation has yielded probable cause to believe that **Eugene Edward GOLDEN** possessed child pornography, coerced, and enticed a minor to engage in a criminal sexual act, and solicited the production of child pornography.

20.    The ongoing investigation has revealed **GOLDEN** possessed numerous files of child pornography depicting the sexual abuse of infants and toddlers. The investigation has also revealed **GOLDEN** solicited the production of a number of these child pornography files from various third parties, who appear to have engaged in child sex abuse, including physical abuse of infants and toddlers, at the behest of **GOLDEN** and in exchange for financial compensation.

21.    This investigation stems from both a HCPD investigation resulting from a pro-active anti-child sex trafficking operation, which uncovered **GOLDEN's** solicitation of multiple females to produce child pornography, as well as from the National Center for Missing & Exploited Children Cyber-Tipline Reports ("Associated Cyber Tips"), which were referred to the Maryland Internet Crimes Against Children Task Force in July of 2022.

**Overview of Howard County Police Investigation**

22.    Through a review of records and conversations with Detective Schlossnagle, HCPD – Vice & Narcotics Division, Your Affiant is aware that in July 2021, HCPD detectives contacted

14

a fifteen-year-old female ("JUVENILE-1") during a pro-active anti-human trafficking operation. JUVENILE-1 had been identified as engaging in acts of prostitution by posting advertisements on public websites known for prostitution solicitation.

23.    Pursuant to a judicially authorized search warrant, HCPD detectives executed a download of JUVENILE-1's cellular phone for evidence related to the trafficking investigation. Upon a review of the data production from JUVENILE-1's cellular phone, Detective Schlossnagle discovered a conversation between JUVENILE-1[2] and an unknown male, later identified as **GOLDEN**, that occurred in June 2021.

24.    During the conversation, as discussed further below, **GOLDEN** coerced, enticed and solicited JUVENILE-1 to produce child pornography in exchange for money.   More

---

[2] Your Affiant is aware that this discussion began on 6/10/2021.  JUVENILE-1 was fourteen years old on this date.

specifically, **GOLDEN** requested JUVENILE-1 produce, "A video of your butt and a video of a young butt no faces no names just butts 1200 and 2500 if I can make it myself cashapp[3] or cash".

25.    **GOLDEN** later advised JUVENILE-1 his preferred age of the younger child is between ages of "1 and 10".  Your Affiant has set forth several additional messages sent from **GOLDEN** to JUVENILE-1 below:



26.    **GOLDEN** transmitted four images to JUVENILE-1, one of which depicts two African American children standing and facing away from camera.  Both have their pants and underwear pulled to their ankles and are bending over to expose their bare buttocks for the camera.

27.    Based upon the apparent solicitations by **GOLDEN** for JUVENILE-1 to produce child pornography, Detective Schlossnagle began investigating **GOLDEN**, then unknown, in an effort to make a positive suspect identification.  Detective Schlossnagle submitted legal demands

---

[3] Your Affiant is aware that CashApp is a peer-to-peer money transfer service.

to Pinger Inc for TextFree[4] phone number ███████████████████████ this is the phone number used by **GOLDEN** to contact JUVENILE-1 in the chat session, above.

28.    In response to a subpoena, Pinger Inc. provided internet protocol ("IP") records associated with use of the ████████████████. Detective Schlossnagle noted that during the chat session with JUVENILE-1 on June 10, 2021, the suspect's IP was 172.58.219.87. It was determined this IP was issued by T-Mobile. A subpoena for records produced negative results as T-Mobile's system is unable to determine a subscriber or data detail. However, during chat sessions the next day, on June 11, 2021, the servers captured a different suspect IP address throughout the day. The logs captured the same IP address 79 times. This IP address was 69.251.206.12, which was issued by Comcast. A subpoena for records showed the Comcast subscriber for this account is "Marquis Brown" and she was fully identified as Marquis Shamere Brown (B/F 10/13/84). The service address on file is "4001 W. Northern Pkwy Apt. B2 Baltimore, MD 21215"[5].

29.    Based upon these subpoena results, judicially authorized search warrants, as well as investigative techniques, Detective Schlossnagle was able to ascertain that: ████ PHONE NUMBER was in the area of 3951 W Northern Parkway in Baltimore, MD on June 11, 2021, based on IP address information; the ████PHONE NUMBER connected to that IP address was used on June 10, 2021, during the chat with JUVENILE-1; and that ████PHONE NUMBER was utilizing a Google device and/or application. Detective Schlossnagle was then able to obtain

---

[4] Your Affiant is aware that Pinger, Inc maintains a voice over internet protocol ("VOIP") product known as TextFree. TextFree is a messaging application that allows the user to make phone calls/text messages from a number different than that of the user's actual phone number.
[5] As discussed further within this affidavit, Maryland MVA records provided that **GOLDEN**'s current address and residency is at this apartment (further discussed in paragraph 62).

the Google account name, ███████████████ which is associated with the ███

PHONE NUMBER chat sessions with JUVENILE-1, described below.

**Review of Google Account-1**

30.     On April 13, 2022, pursuant to a search warrant, Detective Schlossnagle obtained

the content of Google account ██████████████ ("GOOGLE ACCOUNT-1").

Through a review of the account production, Your Affiant is aware that GOOGLE ACCOUNT-1

has the following subscriber information:

      a. Google Account ID: 101139017975
      b. Name: █████████
      c. Given Name: ████
      d. Family Name: Golden
      e. e-Mail: ████████████
      f. Recovery SMS: +14438043787 [US]

31.     Detective Schlossnagle conducted open-source queries of ████████████

PHONE NUMBER"), the phone number associated with GOOGLE ACCOUNT-1.  Multiple

open-source and law enforcement databases associate the use of the ████ PHONE NUMBER to

**GOLDEN**.

32.     Detective Schlossnagle reviewed Google Pay information provided in the search

warrant production for GOOGLE ACCOUNT-1.  The listed customer is "Eugene Golden".

33.     Detective Schlossnagle reviewed the list of accounts linked with GOOGLE

ACCOUNT-1 by shared phone number.  The Google records indicated that

███████████████ (discussed further below in paragraph 51), is linked to GOOGLE

ACCOUNT-1 because both accounts list the ████ PHONE NUMBER.

34.     During a review of the account content of GOOGLE ACCOUNT-1, Detective

Schlossnagle observed numerous files and records demonstrating **GOLDEN's** control over the

account. Among other things, a photograph of **GOLDEN's** driver's license, a photograph of **GOLDEN's** W-2, and numerous photographs of **GOLDEN** were observed within GOOGLE ACCOUNT-1. Detective Schlossnagle observed screenshots reflecting **GOLDEN's** continued use of the moniker ▮▮▮▮▮▮▮▮▮▮▮▮

35. Detective Schlossnagle also observed uploaded content to GOOGLE ACCOUNT-1 consistent with **GOLDEN** soliciting the production of child pornography. Multiple uploaded SMS screenshots appear to reflect **GOLDEN** soliciting the production of child pornography, and specifically, directing the manner in which the child pornography was manufactured. Specifically, **GOLDEN** requested seeing the anuses of children.

36. Below, Your Affiant has set forth an excerpt from a series of screenshots between **GOLDEN** and an apparent adult female using phone number ▮▮▮▮▮▮▮▮▮▮ NUMBER"). These conversations occurred on or about June 23, 2019:

| Author | Content |
|---|---|
| **GOLDEN** | How many videos you got all together |
| ▮ **PHONE NUMBER** | 3 for now but I need more money I jus sent u 2 so can u cash app sumn u already kno I'm serious cuz I sent 2 videos ova already |
| **GOLDEN** | Don't send to the other phone that's not mine |
| **GOLDEN** | OK what is the 3rd one |
| ▮ **NUMBER** | OK |
| **GOLDEN** | What is the 3rd video |
| ▮ **PHONE NUMBER** | I need u 2 cash app at least 150 I jus sent dem pics I'm not releasing nomore until u cash app sumn let's keep the deal how it was |
| **GOLDEN** | I'm not asking you to release it I'm asking what it is that's all |
| ▮ **PHONE NUMBER** | Dats all I got rite now |
| **GOLDEN** | The last video is you or someone else |
| ▮ **PHONE NUMBER** | Cash app me da money and weneva Dey cum ova my house I will just always send u videos of dem |

| GOLDEN | Ok |
|---|---|
| **PHONE NUMBER** | *Sends video file titled app_parts_5829885951_5888.3gp*<br><br>**Description**: *This is a seven second color video that shows the hands of an adult manipulating the exposed buttocks of a completely nude African American child. The child is reasonably aged 4-6 years old based upon size and development.* |
| GOLDEN | Can you bend it over please |
| **PHONE NUMBER** | *Sends video file titled app_parts_5829887281_5892.3gp*<br><br>**Description**: *This is a five second color video that shows the exposed buttocks of an African American child that has his pants and underwear pulled down to expose his buttocks for the camera. The child appears to be pre-pubescent based upon size and a lack of body hair.* |
| **PHONE NUMBER** | Can u send me my money |
| GOLDEN | Yes I'm going to send it |
| **PHONE NUMBER** | I'm not comfortable doin all dat I kept my part of da deal now keep urs send my money |

37.    Below, Your Affiant has set forth an excerpt from a series of screenshots between **GOLDEN** and ▮ PHONE NUMBER where **GOLDEN** instructs the apparent female to send a screenshot to another phone number ▮

| **Author** | **Content** |
|---|---|
| **GOLDEN** | You did me dirty that's fucked up |
| **GOLDEN** | Do you want this 250 or no this my last time asking |
| **PHONE NUMBER** | I sent a video she's 3 |
| **PHONE NUMBER** | Let me kno if u got it |
| **GOLDEN** | No |
| **PHONE NUMBER** | U got a email cuz I sent it |

---

[6] X7155 PHONE NUMBER is discussed further below and is ultimately linked to GOLDEN via his employment records, as well as a Google account

| GOLDEN | Is it bent over so I can see the butthole in it |
|---|---|
| ██████ PHONE NUMBER | No I'm not comfortable doin all dat |
| GOLDEN | You took all the videos |
| ██████ PHONE NUMBER | Yes |
| ██████ PHONE NUMBER | I sent u a screenshot |
| GOLDEN | Sent another one to see if it comes through |
| GOLDEN | 4104937155 send it to that number |

38.     Detective Schlossnagle conducted additional investigation and preliminarily

███████████████████████████████████████████████████████████████

███████

39.     On May 13, 2022, Detective Schlossnagle referred the investigation to HSI based upon the nature of the offenses and need for multi-jurisdictional assistance.

### The NCMEC Cyber-Tipline Reports

40.     In July 2022, the Maryland ICAC Task Force assigned NCMEC Cyber Tip #128887022 and eight related cyber-tipline reports ("Associated Cyber Tips") to the Baltimore Police Department for investigation.

41.     NCMEC escalated the Associated Cyber Tips because Cyber Tip #128887022 stated that the referral, "…appears to contain images/videos that appear UNFAMILIAR and may depict NEWLY PRODUCED and/or HOMEMADE CONTENT".

42.     The Associated Cyber Tips indicate that on various dates from 2020-2022, the account user uploaded child pornography to the Google Drive infrastructure. The following basic subscriber information was provided in the Associated Cyber Tips:

    a.   Name: ████████████

b. <u>Date of Birth</u>: 09-22-1986[7]

c. <u>Email Address</u>: ███████████████████████████

d. <u>IP Address</u>: 2607:fb90:64a9:f5da:7075:af5b:2547:799b (Login) / 06-09-2022 03:06:27 UTC

e. <u>IP Address</u>: 69.251.206.12 (Login) / 04-05-2022 00:34:18 UTC

43.     Cyber Tip #128887022 contained 354 suspected child pornography files that were uploaded to the Google Drive infrastructure of the reported account.  Two of these files were reviewed by Google prior to the NCMEC referral.  Your Affiant has set forth a description of both files below:

a. <u>Filename:</u>bfe70dcc-57be-48a8-8e6a-8955b9f023f6.jpg
<u>Description:</u>  This is a color image file that shows two juvenile males standing.  Both are completely nude.  The males are visible from knees to breastbone.  The males are facing the camera with their genitals exposed in a lewd/lascivious manner.  The juvenile male depicted has underdeveloped genitals and a lack of any visible pubic hair.

b. <u>Filename:</u>media_5da533d8660bc1.66326596_c60fcaa453223ed053a90b9250dba 768a5892e7ec017979184b10b47a99e96ef.jpg
<u>Description:</u> This is a color image file that shows three juvenile males kneeling on an apparent gray mattress.  The males have their underwear pulled down to their knees, exposing their buttocks and genitals in a lewd/lascivious manner.  Two of the males appear pre-pubescent based upon size and an apparent lack of pubic hair.

44.     Relevant to the aforementioned files, Cyber Tip #128887022 stated, "The following reported files appear UNFAMILIAR and may depict NEWLY PRODUCED and/or HOMEMADE CONTENT.  Reported file "bfe70dcc-57be-48a8-8e6a-8955b9f023f6.jpg" appears to depict two prepubescent male children.  The children are seen nude.  Report file

---

[7] Your Affiant notes that this is **GOLDEN's** birthdate.

"media_5da533d8660bc1.66326596_c60fcaa453223ed053a90b9250dba768a5892e7ec0179 9184b10b47a99e96ef.jpg" appears to depict three prepubescent male children. The children are seen nude, with their genitalia and anuses exposed.

45. BPD Detective Matchett served Comcast with a Baltimore City Grand Jury Subpoena requiring the production of subscriber information associated with IP address 69.251.206.12 assigned on 04-05-2022 at 00:34:18 UTC. This was an IP address utilized to access the reported Google account. Comcast, in response to this subpoena, provided subscriber information, set forth below in relevant part:

a. Subscriber Name: MARQUIS BROWN
b. Service Address: 4001 W NORTHERN PKWY APT B2 BALTIMORE, MD 212154479
c. Bill to Name: BALT COUNTY GOVERNMENT
d. Billing Address: ATTN JOHN DAVIS 400 WASHINGTON AVE RM 33 TOWSON, MD 21204
e. Telephone #: (443) 762-9531
f. Type of Service: Internet
g. Account Number: 8299400421470639
h. Account Status: Disconnected 8-31-2022

46. On November 7, 2022, Maryland State Police (MSP) Trooper John Wildman became aware of the Associated Cyber Tips and was requested by Detective Matchett to assist with the ongoing investigation[8]. Trooper Wildman obtained a Baltimore City Search Warrant for the content of darksideofprince2286@gmail.com ("GOOGLE ACCOUNT-2") and served the search warrant upon Google on the same date.

**Review of GOOGLE ACCOUNT-2**

---

[8] At the time of the referral, Your Affiant was unaware of BPD/Maryland ICAC's investigation.

47.    On November 9, 2022, pursuant to a Baltimore City Circuit Court search warrant, Trooper Wildman received, and reviewed, Google account content associated with GOOGLE ACCOUNT-2. This content was also shared with Your Affiant.

48.    Your Affiant observed over 500 commercially available[9] child pornography files stored within the Google Drive[10] portion of GOOGLE ACCOUNT-2. Your Affiant has set forth two examples below:

   a.   Filename: bxqzo8v8s4xoq6rizn5qt-at-2020-01-20T21_56_53.030Z-unpinned.webm
   Description: This is a color video file, one (1) minute and 33 seconds in length, showing a completely nude pre-pubescent female giving fellatio to the penis of an adult male. The juvenile female is grossly underdeveloped and is reasonably aged 4-6 years old.

   b.   Filename: 4jgrntop8azxsggieccwi.webm
   Description: This is a color video showing an adult male masturbating onto the face of a completely nude pre-pubescent female that is blindfolded. The juvenile female is grossly underdeveloped, devoid of pubic hair, and reasonably aged 4-6 years old.

49.    Your Affiant also observed several hundred images and videos of child pornography that appear to have been produced by various adult females and transmitted to **GOLDEN**. Your Affiant observed that a number of videos show adult females actively engaged in the sexual abuse of infants and toddlers, apparently at **GOLDEN's** behest. Your Affiant has set forth several example videos below:

   a.   Filename: 5e2116b9-6f84-4bc4-8b5d-9978cb82c7c0-at-2021-09-08T01_57_52.7 70Z-unpinned.mp4

---

[9] As this term is used herein, it references child pornography files that are known to law enforcement and are traded among child pornographers via various means. This term is used to distinguish between files that law enforcement believe were recently produced.
[10] Google Drive is Google's cloud-based file storage service.

Description: ██████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

██████████████████████████████████████████

████████████████████████████

b.  Filename: 5fcbc176a1eea1.38259610.mp4_HD(1)-at-2021-11-01T16_58_52.117
Z-unpinned.mp4

Description: ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████

c.  Filename: Mine25

[11] Your Affiant notes herein the GOLDEN frequently utilizes the moniker "Prince" based upon an analysis of account data from GOOGLE ACCOUNT-1 and GOOGLE ACCOUNT-2.



Description: [REDACTED]

d. Filename: 11eb2e28-23f8-4c55-9e56-3b2fb87a13e7-at-2021-08-30T16_31_14.02
   3Z-unpinned.mp4

Description: [REDACTED]

e. Filename: 39228a21-9af2-4b4e-a9f5-db46400915d5.mp4

Description: [REDACTED] mp4_HD(2)-at-2021-11-01T16_57_58.327
Z-unpinned.mp4

---

[12] Your Affiant notes that GOLDEN's first name is "Eugene", and that "Gene" is a common abbreviation of this name.

<u>Description</u>: This is a color video file, 16.50 seconds in length, that depicts a pre-pubescent male laying on his back with their genitals exposed in a lewd/lascivious manner. The genitals are underdeveloped and there is a lack of any visible pubic hair. An African American adult hand pulls aside the butt cheeks of the juvenile to expose the anus. The adult hand then touches the juvenile's penis.

50.     The GOOGLE ACCOUNT-2 email account was found to be associated with the following electronic accounts: ███████████████ **(GOOGLE ACCOUNT-4),** and ██████████████████ **GOOGLE ACCOUNT-5)** pursuant to the records provided by Google.

51.     On November 10, 2022, an administrative summons was sent to Google, Inc. for information pertaining to the account ████████████(GOOGLE ACCOUNT-3). This account was found to be associated with the GOOGLE ACCOUNT-1 originally investigated by HCPD due to a shared phone number (see paragraph 33 above).  Google, Inc. responded with the following information:

| | |
|---|---|
| Google Account ID: | 114893203944 |
| Name: | Eugene golden |
| E-Mail: | ██████████ |
| ████████ | 2014-05-05 12:55:54 Z |
| Last Updated Date: | 2021-08-03 09:54:40 Z |
| Recovery SMS: | +██████████ |

52.     On November 10, 2022, an administrative summons was sent to Google, Inc. for information pertaining to the account **freakboygolden86@gmail.com** (GOOGLE ACCOUNT-4). Google, Inc. responded with the following information:

| | |
|---|---|
| Google Account ID: | 153549028906 |
| Name: | Eugene Golden |
| E-Mail: | f██████████ |
| Account Created: | 2017-11-07 14:42:29 Z |
| Last Updated Date: | 2022-09-15 03:31:08 Z |
| Last Logins: | 2022-09-15 03:31:08 Z, 2022-08-07 00:33:43 Z, 2022-04-05 00:34:17 Z |

Recovery e-Mail: ███████ ██████████████████

53.     On November 10, 2022, an administrative summons was sent to Google, Inc. for information pertaining to the account **princecharming2286@gmail.com** (GOOGLE ACCOUNT-5). Google, Inc. responded with the following information:

| | |
|---|---|
| Google Account ID: | 871058901298 |
| Name: | |
| | ████ ████████████████ |
| Account Created: | 2020-06-30 02:57:54 Z |
| Terms of Service IP: | 2601:14d:4380:b690:3c77:b2ed:ecbc:31e2 |
| Last Updated Date: | 2022-06-09 03:06:25 Z |
| Last Logins: | 2022-06-09 03:06:25 Z, 2022-04-05 00:34:18 Z, 2021-09-03 05:10:24 Z |

54.     On November 10, 2022, an administrative summons was sent to Google for information pertaining to the e-mail account ████████████████ (GOOGLE ACCOUNT-1). Google, Inc. responded with the following information:

| | |
|---|---|
| Google Account ID: | 101139017975 |
| Name: | Eugene Golden |
| E-Mail: | |
| Account Created: | 2011-02-05 00:13:10 Z |
| Terms of Service IP: | 173.115.250.152 |
| Last Updated Date: | 2022-10-09 05:26:33 Z |
| Last Logins: | 2022-10-09 05:26:33 Z, 2022-09-23 23:06:45 Z, 2022-09-06 20:13:33 Z |
| Recovery SMS: | |

**Information relating to Apple iCloud and Phone Number ██████████████████ NUMBER) Maintained by Apple Inc.**

55.     Pursuant to the aforementioned administrative subpoena, issued lawfully by HSI, Google produced basic subscriber information for GOOGLE ACCOUNT-4. Your Applicant notes that the subscriber's name for GOOGLE ACCOUNT-4 is "Eugene Golden". The recovery SMS phone number for GOOGLE ACCOUNT-4 is the ████████████████.

56.     On November 9, 2022, Trooper Wildman served a preservation request to Apple asking for the lawful preservation of Apple iCloud accounts associated with various identifiers attributed to **GOLDEN** during the ongoing investigation, including the ███████████████ and GOOGLE ACCOUNT-1.

57.     November 10, 2022, Apple responded to the preservation request and noted that iCloud Account(s) maintained by Apple Inc., associated with the ████ PHONE NUMBER (the number associated with GOOGLE ACCOUNT-4) and ███████████████████ were preserved for 90 days. Accordingly, Your Affiant believes that the ████ PHONE NUMBER and e-mail ██████████████████ (GOOGLE ACCOUNT-1), both independently attributed to **GOLDEN**, are identifiers for Apple iCloud accounts controlled by **GOLDEN.**

58.     On November 10, 2022, an administrative subpoena was sent to T-Mobile Inc. for subscriber information for ████ PHONE NUMBER. T-Mobile Inc. responded with the following information:

    Billing Account Number:     195989754
    Account Establish Date:     12/23/2004
    Account Billing Address(es):
          Effective:            04/18/2021
          EUGENE GOLDEN
          4001 W NORTHERN PKWY APT B2
          BALTIMORE, MD 21215

59.     On November 1, 2022, Your Affiant conducted record checks using law enforcement databases, which determined **Eugene Edward GOLDEN**, with a date of birth of 09/22/86, is associated to the **SUBJECT PREMISES**. MVA records reflect **GOLDEN's** listed address as the **SUBJECT PREMISE**.

60.     On November 16, 2022, Your Affiant received information from GOLDEN's employer, the Division of Pretrial Services, regarding a form in GOLDEN's employment file. On

August 24, 2022, GOLDEN filled out an Emergency Response Form provided an address of 4001 West Northern Parkway, Apt. B2, Baltimore, MD 21215. GOLDEN provided a phone number of ▓▓▓▓▓ PHONE NUMBER associated GOOGLE ACCOUNT-4 and Apple):

DIVISION of PRETRIAL DETENTION and SERVICES
EMERGENCY RESPONSE FORM
"CDO" –

One of the conditions of employment at the Division of Pretrial Detention and Services is that all employees maintain a current listing of their name, address and a working telephone number. NOTE: Employees with the "Call Intercept" feature on their phone MUST provide an override code to the agency. Each employee is required to update this information with the Human Resources Department Supervisor / Operations each time any of the information changes. Failure to update this information by completing this form may subject the employee to disciplinary action.

**PLEASE PRINT ALL INFORMATION LEGIBLY**

NAME: Golden Eugene E
(LAST) (FIRST) (MIDDLE INITIAL)

ADDRESS: 4001 West northern parkway Apt B2
(STREET ADDRESS... DO NOT LIST A POST OFFICE BOX)

Baltimore Maryland 21215
(CITY) (STATE) (ZIP CODE)

HOME TELEPHONE NUMBER: 410 ▓▓▓▓▓
(AREA CODE) (NUMBER)

*YOUR OVERRIDE CODE IS REQUIRED IF YOU HAVE "CALL INTERCEPT":*

CELL PHONE NUMBER: 410 493-7155
(AREA CODE) (NUMBER)

DATE of BIRTH: 09.22.1986    ENTRY DATE: 10.20.21

TITLE / POSITION: Dietary Officer   DEPARTMENT:

SOCIAL SECURITY (FIRST FIVE#'s): 245-49  WORKDAY: 2146387  BADGE#: 2304

DRIVER'S LICENSE #: G-435-237-189-734

WEAPON'S CARD # / EXPIRATION DATE: (IF APPLICABLE)

IN THE EVENT OF AN EMERGENCY, PLEASE NOTIFY:

NAME: Juanita Genius   PHONE: 443 983-0586
(AREA CODE) (NUMBER)

ADDRESS: 7220 Park Heights Ave  Apt B  Baltimore, md 21215
(STREET ADDRESS) (CITY / STATE / ZIP CODE)

RELATIONSHIP: Mother

EMPLOYEE'S SIGNATURE: [signature]  DATE: 8-24-22

61.    Pursuant to a judicially authorized search warrant for real time location data information, **GOLDEN's** ▓▓ PHONE NUMBER is currently being utilized at the **SUBJECT PREMISE** on November 16-17, 2022. On November 16, 2022, **GOLDEN** called out of work, so the location data of his ▓▓ PHONE NUMBER is consistent with him staying home from work.

## CONCLUSION

62. Based on the above information, I respectfully submit there is probable cause to believe that **EUGENE EDWARD GOLDEN** violated 18 U.S.C. § 2251 (Sexual Exploitation of Children) and 18 U.S.C. § 2252A(a)(5)(B) (Possession of Child Pornography) in that beginning on or about June 23, 2019 **GOLDEN** knowingly employed, used, persuaded, induced, enticed or coerced minors to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and **GOLDEN** had reason to know that the visual depiction would be transported in interstate or foreign commerce, said visual depiction was transported in interstate or foreign commerce, or that materials used to produce the visual depiction were transported in interstate commerce. Further, I respectfully submit that there is probable cause to believe that **GOLDEN** violated 18 U.S.C. § 2252A(a)(5)(B) (Possession of Child Pornography) in that on or about November 9, 2022, **GOLDEN** knowingly possessed any material that contained an image of child pornography, that the image was shipped and transported using any means or facility of interstate and foreign commerce and in and effecting interstate and foreign commerce by any means, including by a computer, and that the image was produce using material that had been mailed, shipped or transported in and affecting interstate and foreign commerce by any means including a computer, that is **GOLDEN** kept and stored child pornography on his Google Drive. I therefore respectfully request that a complaint and arrest warrant be issued for **GOLDEN** for violations of 18 U.S.C. § 2251 (Sexual Exploitation of Children) and 18 U.S.C. § 2252A(a)(5)(B) (Possession of Child Pornography).

63. Based on the forgoing information, there is probable cause to believe that the **TARGET OFFENSES** have been violated, and that the property, evidence, fruits and instrumentalities of these offenses as set forth in Attachments B-1, B-2 and B-3, which are incorporated herein by reference, are located in the **TARGET LOCATIONS,** further described

in Attachments A-1 and A-2, and **TARGET ACCOUNTS**, further described in Attachments A-3 and A-4. Based on the activity of **GOLDEN** detailed above, as well as my training and experience, I believe that the **GOLDEN** displays characteristics common to individuals who have a sexual interest in children, and who access with the intent to view and/or, possess, collect, receive, distribute, and produce child pornography as discussed above. Further, I believe that the information above establishes that **GOLDEN**'s devices and accounts contain child pornography and that **GOLDEN** controls and uses **TARGET ACCOUNTS**.

64. Therefore, based upon the foregoing, I respectfully request that this Court issue a complaint and arrest warrant for GOLDEN, as well as search warrants for the **TARGET LOCATIONS** and **TARGET ACCOUNTS**, more particularly described in Attachments  2, A-3, and A-4 authorizing the seizure of the items described in Attachment B-1, B-2, B-3.

Rachal M. Torg
Special Agent
Homeland Security Investigations

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this 17th day of November 2022.

_____
HONORABLE BETH P. GESNER
UNITED STATES MAGISTRATE JUDGE